# Hass *versus* The Philadelphia and Southern Mail Steamship Company.

1. A steamship company made a special contract with a stevedore to unload and load its vessels at New Orleans. Neither the master of the vessel nor his crew had anything to do with the work, which was in the exclusive charge of the stevedore, who employed his own men and used his own machinery and cargo planks. A seaman on one of the company's steamers, while on duty as a night watchman, having stepped on one of these planks, which tilted, he was thrown overboard and seriously injured. He brought suit against the company for damages, which he alleged was occasioned by the negligence of the company's servants. *Held*, that the questions whether the stevedore was an agent of the company or an independent contractor, and whether the plaintiff was a fellow-servant in a common employment, were properly submitted to the jury.

2. Mullan *v.* Steamship Co., 28 P. F. Smith 25, followed.

January 6th 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Woodward, Trunkey and Sterrett, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county*: Of July Term 1876, No. 121.

Case by August Hass against the Philadelphia and Southern Mail Steamship Company to recover damages for injuries which plaintiff alleged were sustained by him through the negligence of the servants of defendant.

At the trial, before Thayer, P. J., it appeared that the plaintiff was a seaman on the steamship Tonawanda, owned by defendants. On September 8th 1874, the night of the accident, the vessel was lying at the levee in the river at New Orleans, partly unloaded, and partly loaded with the return cargo, her deck being about five feet lower than the level of the levee. Running from the deck to the levee were two gangways, one forward and the other aft, used for loading and unloading. These gangways were composed of six or seven heavy planks, about a foot wide by thirty feet long, resting on the levee, their ends projecting out and over the deck of the vessel to her hatches, some four or five feet, and resting upon a bench or support erected on the deck of the vessel for that purpose. Blocks were used to steady the planks and to overcome the rise and fall of the vessel caused by the rise and fall of the river. In order to keep the planks on a level with the levee, some of the blocks were taken out as the vessel rose, and additional ones were put in as she fell. When the vessel fell, there would be a space between the blocks and the ends of the planks, rendering them unsteady and liable to sink down if a weight came upon them. The vessel was being unloaded and loaded by a general stevedore, one Manning, whom the company employed under a special contract to pay him so much per day on the outward cargo, and by the package or barrel on the inward. The stevedore employed his own men, and he and they arranged the planks, gangways and blocks. None of the crew had

anything to do with the arrangement of the planks, or with adjusting them to the rise and fall of the river. The chief officer saw that the cargo was properly stored and the ship properly trimmed, but he had no other duty connected with the loading and discharging of the cargo. Neither the stevedore nor his men were in any way connected with the vessel or her employment. The stevedore employed and paid his own men, and he was paid by the agent of the company at New Orleans. The loading and unloading was entirely in his charge.

On the vessel's arrival at New Orleans, plaintiff was asked by the master to act as night watchman on board, in consideration of having all day off to himself—to which he consented. It appeared that this was the customary way of watching steamers while in port, and the position of watchman was considered a desirable one by the seamen, on account of being thereby relieved from duty in the daytime, as otherwise they would be obliged to take their turn in watching at night, in addition to their regular duties during the day. As night-watchman, it was his duty to take general charge of the ship, keep her fasts from chafing, admit no one on board except the ship's company, and see that nothing was stolen. On the night of the accident, the plaintiff, while thus acting as night-watchman, heard a noise, and starting forward to learn the cause, stepped upon the second plank of the gangway, near the pilot-house, which, giving way by reason of the vessel having sunk during the night, the plaintiff tripped and fell over the planks into the water, breaking his leg and bruising himself in the fall. It was in evidence that when the stevedore and his gang would leave the vessel after the performance of their day's work, these cargo planks were in the charge of the officer of the deck at night; that plaintiff knew of the condition of the planks, and that it was his duty to have blocked them himself, or to have notified the officer of the deck.

The following points were submitted by plaintiff, to which are subjoined the answers of the court:

1. That it was the duty of defendants, as the employers of plaintiff, to exercise reasonable care and diligence in supplying him with safe machinery, and keeping the ways, passages and approaches, in and about his work and labor, in a safe and secure condition.

Ans. "I decline to affirm this point. It was not the duty of the employers to keep and maintain these planks in safe condition as regards the plaintiff. It is, of course, their duty to employ proper fixtures and machinery, and they are liable, if they have been guilty of any neglect or want of care in this respect."

2. That when an employer places the entire charge of his business, or a distinct branch of it, in the hands of a middleman, agent, or representative exercising no discretion and no oversight of his own, then the neglect by such agent or reprepresentative of ordinary care in supplying and maintaining suitable instrumentalities

[Hass *v.* Philadelphia and Southern Steamship Co.]

for the work required, is a breach of duty for which the master becomes responsible, and should be held answerable.

Ans. "If this point is intended to mean that when a person employs another in an independent employment, he is responsible, under all circumstances, to one of his employees for an injury caused by that person's negligence, I decline to so charge. He is responsible if he employs an agent, but not if he employs a person in an independent employment. That is the general rule."

3. That if the jury find that the defendants had left the entire charge of the business and management of the vessel, and of the keeping of the ways, passages, approaches and appliances thereto in a safe and secure condition in the hands of the master of the vessel, Captain Wiltbank, as their agent and representative, exercising no discretion and no oversight of their own, that in that case, neglect by the master, of ordinary care in supplying and maintaining suitable machinery and instrumentalities for the work required of plaintiff, and in keeping the ways, passages, approaches and appliances in and about the same, in a safe and secure condition, is a breach of duty for which the defendants would be responsible to plaintiff if he received injury through such neglect.

Ans. "I do not understand what is meant in this point by suitable machinery, or how it is applicable to this case. The question is as to the displacement of a gangway. If it means that the owners are responsible to the plaintiff for an injury happening through the negligence of the captain and crew, I negative it."

4. That if the jury find that the defendants had placed the entire charge of the business of loading or unloading the vessel in the hands of Mr. Manning, the chief stevedore, as their agent or representative, exercising no discretion or oversight of their own, that in that case neglect by such agent or representative of ordinary care in supplying and maintaining suitable instrumentalities for the work required, and in keeping the ways, passages, approaches and appliances in and about the same in a safe and secure condition, is a breach of duty for which the defendants would be responsible in case plaintiff were injured thereby.

Ans. "When I employ a man to do a particular thing under my control, I am responsible for an injury caused by his negligence; but if I employ one whose trade it is to do that particular thing, and submit the whole to him, I am not responsible. That is the general rule. If it was the duty of the master and sailors to keep the decks clear of such obstruction, the owners would not be responsible to the plaintiff for the neglect of that duty, although they would be to a stranger."

6. That if they found that notwithstanding the position of Manning, the chief stevedore, he was merely a fellow-workman of plaintiff, and that the injury was caused by his negligence, that then it will be for them to say whether his negligence was one of the risks

[Hass *v.* Philadelphia and Southern Steamship Co.]

which the plaintiff should be held to have assumed when he con-
sented to act as watchman of the vessel by night.

Ans. "Manning was not a fellow-workman. He was not en-
gaged in the same line of business. If the company is exempt from
the consequences of his neglect, it is on the ground that Manning
was in an independent employment."

7. That if they found that plaintiff's injury was caused by the
negligence of the chief stevedore, and that as watchman of the vessel
he was not a fellow-servant of the chief stevedore, but was working
for the defendants in an entirely different employment, that then
the plaintiff is entitled to recover.

Ans. "I decline to affirm this point in the form in which it is
put, because you must also inquire, if you find that the negligence
was originally that of the stevedore, whether leaving the planks in
that condition was negligence on the part of the master and sailors,
and if it was, plaintiff cannot recover."

In the general charge the court said :—

"There are certain fundamental principles of law which it is
necessary to consider in all cases of this character. This is an action
against the steamship company for alleged negligence on the part
of their agents. Undoubtedly the general rule is, that a principal
is responsible for an injury happening by the negligence of his
agents. But this rule is subject to certain qualifications and limit-
ations. In the first place, the plaintiff, in an action of this kind,
must prove negligence on the part of the employer or his agents,
and he must also prove that the accident was occasioned by it.
Again, it is a rule of law, that in a case of this kind, if the plaintiff
has himself been negligent, then he cannot recover, although there
may have been negligence on the part of the master also. Where
the person injured is partially to blame himself, he cannot recover
damages, although his employer also has been negligent. If there
was contributory negligence, if his own acts assisted in producing
the accident, he cannot recover.

"A man, when he enters upon any employment, assumes all the
risks which ordinarily and naturally belong to that business. For
example, if an employer has taken proper care in the selection of
his engineer, and the engine or boiler explodes, and the engineer is
hurt, he cannot recover. It is a risk which he took. So it is with
a sailor. He takes the risk which is ordinarily incident to his
occupation.

"From the evidence, it seems to me that the plaintiff was acting
as a sailor. He was a watchman, it is true, but he was watching
as a sailor. It is his duty to go on watch when directed by the
master, whether in port or on sea. The master is a sort of tyrant
on board of his vessel. He has the right to give such orders as he
pleases. If commanded so to do by the master, the plaintiff would
have been obliged to watch the ship just as much in the port of

[Hass *v.* Philadelphia and Southern Steamship Co.]

New Orleans as at sea. It seems by the testimony that the sailors regard the duty of watchman while in port as rather desirable. They enjoy certain privileges and exemptions from duty in consequence of it.

"But a man does not assume risks which are not such as naturally belong to his employment, and are occasioned by the negligence of his employer. He does assume all risks arising from the negligence of persons employed in the same common employment with himself. It is one of the risks which he undertakes when he enters upon the employment. If this accident was caused by the negligence of any person engaged in a common employment with himself, such as the captain and sailors, plaintiff cannot recover.

"Again, where a man employs another, who is engaged in a separate or independent employment, he is not responsible for the negligence of that person, whereby another person is damaged. A bricklayer, building your chimney, lets a brick fall upon another person's head—you had no control over him—it would be unjust to hold you responsible. If I am in my carriage, and my driver negligently drives over another, whereby he is injured, I am responsible, for he is my servant. If I am in an omnibus, I am not responsible for the negligent driving of the driver. This is the case where the employer exercises no control over the employed.

"The plaintiff must prove that the accident occurred through the negligence of the company or its agents. If it arose from the negligence of a person employed by the company in an independent employment, then the defendants are not liable.

"If this accident resulted from the negligence of any of the sailors, or persons employed in a common employment with the plaintiff, then he cannot recover.

"Of course, if it was the paintiff's duty to have looked out after these gang-planks himself (and Captain Young says it was; you will judge from the evidence), then undoubtedly he cannot recover, for that would be to permit a man to recover for the consequences of his own negligence. Even if the stevedore was negligent, if the negligence of the plaintiff was the immediate cause, your verdict must be for the defendants. 　*　　*　　*　　*　　*　　*

"The defendants say that the arrangement of the planks was a thing which was committed by them to the stevedore, who was in an independent employment; that he was employed to do that very thing, and that defendants had no control over him. He did it in his own way, and with his own men. The plaintiff on the other hand, says that he was an agent of the company. If he was merely an agent, that is, if he was a simple agent, the defendants are responsible; but if he was a person engaged in an independent employment, then the defendants would not be responsible for his negligence in the course of that employment.

"The defendants would. in my judgment, have been responsible

7 NORRIS—18

[Hass *v.* Philadelphia and Southern Steamship Co.]

to a stranger if the planks were improperly left by the stevedore in a dangerous condition, and an accident had happened to him from that cause, because if so left the defendants would be responsible to a stranger for the negligence of the master or crew in not removing them. But I cannot say that as regards a sailor employed on board.

"If it was the duty of the master, or of the ship's crew, to remove these boards, then the defendants are not responsible in this suit. The owner's responsibility is limited to the duty of employing competent persons. If he does that, he is not liable. The defendants are not responsible for the negligence of the captain or crew, if it caused this injury, and if the accident happened through the failure of the captain or crew to attend to their duty, defendants are not liable. If a sailor, or even the captain leaves anything wrong on deck, and an accident happens, the employer is not liable to one of the sailors for that. That is the negligence of a person in the same employment. It would otherwise amount to this, that owners of a vessel guarantee to sailors, safety from the negligence of the officers or sailors.

"1st. You are to find whether the defendants were negligent.

"2d. Was there any negligence on the part of plaintiff? He says he had walked over the planks once that night and they tilted with him. Was he warned, and was it negligence in him to walk over them again? I say again, that if the negligence was originally the stevedore's, and the stevedore was in an independent employment, then the defendants are not responsible if the accident happened in consequence of a neglect on the part of the captain or crew to remove the planks. If it was the duty of the plaintiff to have removed this obstruction himself, then of course he cannot recover. Nor can he, if it was the business of the captain or crew to do so. If, on the other hand, the accident is exclusively attributable to the negligence of the defendants, then the plaintiff ought to recover."

Verdict and judgment for defendants. A rule for a new trial being subsequently discharged, the plaintiff took this writ, and assigned for error the answers to the above points and the charge of the court.

*Edward F. Pugh* and *George P. Rich*, for plaintiff in error.— When plaintiff entered upon his duties, he had the right to expect from his employers, the defendants, that the deck on which he was to walk for the purposes of his employment, and the planks which he was to watch in that employment, should be in a safe and secure condition; that there should be, through negligence, no trap exposing him to the risk of injury. They were bound to the exercise of reasonable care and proper diligence that it should not be in an unsafe and dangerous condition, either through their own negligence or through the negligence of any deputy master, agent or representa-

[Hass *v.* Philadelphia and Southern Steamship Co.]

tive put by them in their place in charge of their business, and clothed with their powers and duties : Weger *v.* Pennsylvania Railroad Co., 5 P. F. Smith 460 ; O'Donnell *v.* Allegheny Valley Railroad Co., 9 Id. 239 ; Johnson et ux. *v.* Bruner, 11 Id. 58 ; Ardesco Oil Co. *v.* Gilson, 13 Id. 146 ; Mullan *v.* Philadelphia & Southern Mail Steamship Co., 28 Id. 25 ; Patterson *v.* Pittsburgh & Connellsville Railroad Co., 26 Id. 393 ; Walker *v.* Bolling, 22 Ala. 294 ; Grizzle *v.* Frost, 3 Fos. & Fin. 622 ; Shearman & Redfield on Negligence, § 102 ; Whart. Law of Negligence, § 229. When the law imposes a specific duty upon an individual, that duty cannot be evaded, or the exclusive responsibility for its non-performance or imperfect performance be thrown upon a contractor : Storrs *v.* City of Utica, 17 N. Y. 104 ; Hole *v.* Sittingbourne, &c., Railroad Co., 6 H. & N. 488 ; Blake *v.* Thirst, 2 H. & C. 20 ; Allen *v.* Willard, 7 P. F. Smith 383 ; Homan *v.* Stanley, 16 Id. 464. There was not here the clear and satisfactory proof of a contract between the company and Manning, as an independent contractor, by which he assumed the entire charge and control of the work, without any interference by them or their officers, held to be necessary in Allen *v.* Willard, 7 P. F. Smith 383, to enable them to shift its responsibility upon the stevedore : Blake *v.* Thirst, 2 H. & C. 20 ; Storrs *v.* City of Utica, *supra ;* Lowell *v.* Boston & Lowell Railroad Co., 23 Pick. 24. The master is not a fellow-servant in a common employment with his seamen : Shearman & Redfield on Negligence, § 102. He is the agent of the owner, and his negligence is the owner's. The court should have left it to the jury to say whether the person whose negligence caused the accident was an agent for whose acts the employees were responsible, or a fellow-servant : Mullan *v.* Philadelphia & Southern Mail Steamship Co., *supra.* And it was for the jury to say whether the performance of the duties of watchman was not a separate employment, and did not impose new obligations on the employees.

*Morton P. Henry,* for defendant in error.—To be a watchman at times is an ordinary part of the sailor's duty. The attempt to describe that employment as a new engagement, independent of his employment as a sailor, is fallacious.

The vessel was loaded and unloaded, not by the ship's crew, but by an independent contractor—Manning—who was not a servant or employee of the company, but undertook the job by contract, in the same way that a coal dealer supplies coal to a house, and an ashman contracts to take away the ashes. This is the usual and customary way in that port.

The gangways were furnished by the stevedore and arranged by him and did not belong to the ship. Defendants had no control over the stevedore in the manner of the working. There was no evidence to charge the master with negligence in any respect. He

[Hass *v.* Philadelphia and Southern Steamship Co.]

did not furnish the planks, arrange them, control those who did, or engage its structure.

Manning was in an independent employment, and not the servant of the company : Allen *v.* Willard, 7 P. F. Smith 347 ; Painter *v.* City of Pittsburgh, 10 Wright 213.    The plaintiff knew the planks were loose, and he was guilty of contributory negligence in stepping upon them.[1]

The judgment of the Supreme Court was entered January 20th 1879,

PER CURIAM.—A careful examination of the charge of the learned judge below, and of his answers to the plaintiff's points, has satisfied us that none of the assignments of error in this case ought to be sustained.    The decision of this court in Mullan *v.* The Steamship Company, 28 P. F. Smith 25, was closely followed.    It was left to the jury to find whether the chief stevedore, Manning, was a simple agent—with the instruction that if he was, the company was liable ; but not if he was in an independent employment.    If, however, the accident resulted from the negligence of the master or crew, then the company was not liable to another of the crew. There was no evidence in the cause that the company had placed the entire charge of its business in the hands of either the master or chief stevedore, so as to make the negligence of either their negligence.    The entire case was properly submitted to the jury as presenting questions of fact for their decision.    We must take the whole charge and answers together, and not separate parts by themselves.

Judgment affirmed.